UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

ROY ABRAMOWITZ
  Plaintiff,

v.                                            Civil No. 3:02CV2154 (AVC)

SCOTT ROMANO,
  Defendant.

### RULING ON THE DEFENDANT'S MOTION FOR SUMMARY JUDGMENT

This is an action for damages brought pursuant to 42 U.S.C. § 1983 and 42 U.S.C. § 1988. The complaint alleges that the defendant, Scott Romano, a New Canaan police officer, violated the plaintiff's, Roy Abramowitz's, fourth and fourteenth amendment rights when, without probable cause, he arrested and prosecuted Abramowitz. On April 10, 2003, Romano filed the within motion for summary judgment (document no. 11) pursuant to Fed. R. Civ. P. 56(b), arguing that there are no material issues of fact in dispute and that they are entitled to judgment as a matter of law.

The sole issue presented is whether Romano is protected from personal liability pursuant to the doctrine of qualified immunity.

For the reasons that hereinafter follow, the court concludes that Romano's actions are protected from personal liability pursuant to the doctrine of qualified immunity. Consequently, the defendant's motion for summary judgment (document no. 11) is GRANTED.

## FACTS

Examination of the complaint, Local Rule 56(a) statements, exhibits, motion for summary judgment, and the responses thereto reveals the following undisputed, material facts:

At all times relevant to this matter, the plaintiff, Roy Abramowitz, was a resident of New Canaan, Connecticut. At all times relevant to this matter, the defendant, Scott Romano, was a law enforcement officer employed by the town of New Canaan, Connecticut.

On October 2, 2000, Romano investigated an alleged breach of peace complaint made by Patrick and Virginia Burke, who are neighbors of Abramowitz. The Burkes' complaint arose from an incident on September 30, 2000. The Burkes accused Abramowitz of making allegedly obscene and threatening gestures towards them and their guests, when they were traveling in their car to their daughter's wedding. Specifically, the Burkes alleged that Abramowitz extended both middle fingers and gave them a "menacing look." In addition, the Burkes accused Abramowitz of following them in his car, tailgating their car, and "swerving all over the road." Patrick Burke, Virginia Burke, and Nancy Burke gave sworn statements attesting to Abramowitz's alleged actions. These actions allegedly occurred at some time during 3:00 pm to 4:00 pm on September 30, 2000.

For his part, Abramowitz denied the allegations when he

spoke with Romano.  Specifically, Abramowitz claimed he was out of town shopping and doing other errands at the time the Burkes said he made the gestures and followed them in his car.  In support of his claims, Abramowitz provided Romano with a statement detailing his whereabouts on September 30, 2000, as well as invoices and credit card bills to substantiate his claims that he had been shopping on September 30, 2000.

On November 26, 2000, Romano applied for an arrest warrant charging Abramowitz with Breach of Peace pursuant to Conn. Gen. Stat. § 53a-181.[1]  The application for the warrant included an affidavit sworn to by Romano.  On December 15, 2000, Robert Hall, Supervisory Assistant State's Attorney, signed the application for the arrest warrant.  On December 19, 2000, Judge Richard Robinson of the Connecticut superior court signed the arrest warrant.

On or about December 20, 2000, an unidentified person telephoned Abramowitz and advised him that a warrant had been issued for his arrest.  On December 22, 2000, at approximately 12:50 a.m., Abramowitz went to the New Canaan Police Department and voluntarily turned himself over to the police.  The police

---

[1] "A person is guilty of breach of the peace in the second degree when, with intent to cause inconvenience, annoyance or alarm, or recklessly creating a risk thereof, such person: (1) Engages in fighting or in violent, tumultuous or threatening behavior in a public place; . . . or (5) in a public place, uses abusive or obscene language or makes an obscene gesture . . . ." Conn. Gen. Stat. § 53a-181.

3

released Abramowitz from custody on his promise to appear at court. Subsequently, the Honorable John F. Kavenewsky acquitted Abromowitz of all charges.

On November 25, 2002, Abramowitz filed the within lawsuit alleging that Romano made various false statements in his affidavit in support of the warrant and that the warrant lacked probable cause.

### STANDARD

On a motion for summary judgment, the moving party must show that there are no genuine issues of material fact in dispute and that it is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c); Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). A dispute regarding a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Aldrich v. Randolph Cent. Sch. Dist., 963 F.2d 520, 523 (2d Cir.1992) (quoting Anderson, 477 U.S. at 248, 106 S.Ct. 2505). The court resolves "all ambiguities and draw[s] all inferences in favor of the nonmoving party in order to determine how a reasonable jury would decide." Aldrich, 963 F.2d at 523. Thus, "[o]nly when reasonable minds could not differ as to the import of the evidence is summary judgment proper." Bryant v. Maffucci, 923 F.2d 979, 982 (2d Cir.1991).

In opposing a motion for summary judgment, the "adverse

4

party may not rest upon the mere allegations or denials of [its] pleading," but must "set forth specific facts showing that there is a genuine issue for trial." Fed R. Civ. P. 56; see D'Amico v. City of New York, 132 F.3d 145, 149 (2d Cir.1998). "If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party." Fed.R.Civ.P. 56(d). "[T]he mere verification by affidavit of one's own conclusory allegations is not sufficient to oppose a motion for summary judgment." Zigmund v. Foster, 106 F.Supp.2d 352, 356 (D.Conn.2000) (citations and quotation marks omitted). Furthermore, "[t]he mere existence of a scintilla of evidence in support of the [non-moving party's] position will be insufficient [to avoid the entry of judgment against the non-moving party]; there must be evidence on which the jury could reasonably find for the [non- moving party]." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986).

## DISCUSSION

Romano contends that he is entitled to summary judgment because "the instant matter is barred by the doctrine of qualified immunity." Specifically, although Abramowitz had "a clearly established right not to be arrested without probable cause," Romano "reasonably believed [that he had] probable cause to arrest" Abramowitz. Therefore, according to Romano his "actions are protected by the doctrine of qualified immunity."

5

Abramowitz responds that "Romano cannot demonstrate that it was objectively reasonable for him to believe he had probable cause to seek the arrest of Abramowitz,. . . or that officers of reasonable competence [could disagree] whether probable cause existed." Specifically, Abromowitz contends that "Romano had factual information gained from his own investigation that clearly showed that he did not have the requisite probable cause to insulate himself from his wrongful conduct towards" Abramowitz.

"The doctrine of qualified immunity shields police officers acting in their official capacity from suits for damages under 42 U.S.C. § 1983, unless their actions violate clearly-established rights of which an objectively reasonable official would have known. . . . When a plaintiff alleges an arrest without probable cause, an arresting officer may assert the defense of qualified immunity if "either (a) it was objectively reasonable for the officer to believe that probable cause existed, or (b) officers of reasonable competence could disagree on whether the probable cause test was met." Rogers v. City of Amsterdam, 303 F.3d 155, 158 (2d Cir. 2002) (internal citations omitted). "In order to be entitled to summary judgment on such a defense, the officer must adduce sufficient facts that no reasonable jury, looking at the evidence in the light most favorable to, and drawing all inferences most favorable to, the plaintiff, could conclude that

6

it was objectively unreasonable for the officer to believe that probable cause did not exist." Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991).

"Probable cause exists when the authorities have knowledge or reasonably trustworthy information sufficient to warrant a person of reasonable caution in the belief that an offense has been committed by the person to be arrested." Rogers v. City of Amsterdam, 303 F.3d at 159 (internal quotation marks omitted). "Normally, the issuance of a warrant by a neutral magistrate, which depends on a finding of probable cause, creates a presumption that it was objectively reasonable for the officers to believe that there was probable cause, . . . and a plaintiff who argues that a warrant was issued on less than probable cause faces a heavy burden. . . . In order to mount such a challenge, the plaintiff must make a substantial preliminary showing that the affiant knowingly and intentionally, or with reckless disregard for the truth, made a false statement in his affidavit and that the allegedly false statement was necessary to the finding of probable cause." Golino v. City of New Haven, 950 F.2d 864, 870-71 (2d Cir. 1991) (internal citations and quotation marks omitted). Similarly, "[i]ntentional or reckless omissions of material information, like false statements, may serve as the basis for a [legitimate] challenge, . . . and recklessness may be inferred where the omitted information was critical to the

probable cause determination." <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870-71 (2d Cir. 1991) (internal citations and quotation marks omitted).

Applying these principles the court concludes that summary judgment is proper. It is undisputed that a warrant for the arrest of Abramowitz was signed by a judge. Thus, a presumption arises that it was objectively reasonable for Romano to believe that there was probable cause. <u>See</u> <u>Golino v. City of New Haven</u>, 950 F.2d 864, 870 (2d Cir. 1991). Abramowitz attempts to overcome this presumption by arguing that Romano misled the issuing court in his affidavit by misstating facts which he knew not to be true. The court is not persuaded.

Abramowitz first claims that, contrray to Romano's statement in his affidavit that "Abramowitz's exact whereabouts could not be confirmed for the afternoon of September 30th," Romano knew that Abramowitz was not home at the time of the incident. In support of this contention, Abramowitz relies on the statement he made to Romano during the investigation, as well as receipts that allegedly corroborate his claims. Abramowitz, however, fails to account for the fact that his statement was contradicted by three sworn statements and that the receipts did not indicate the time of the purchases or who made the purchases. This contradictory evidence, all of which was cited in the affidavit, indicates that Romano's claim that he could not verify Abramowitz's whereabouts

at the time of the incident was, based on the evidence, true. Put simply, the plaintiff has failed to adduce any evidence to indicate that Romano knew conclusively that Abramowitz was not home at the time of the incident and thus misled the issuing court.

Abramowitz also claims that Romano failed to indicate in his affidavit that the sworn statements given by the Burkes included inconsistencies. Although the court agrees that Romano apparently did not indicate the inconsistencies identified by Abramowitz, the contradictions can hardly be considered necessary to the finding of probable cause. See Golino v. City of New Haven, 950 F.2d 864, 870 (2d Cir. 1991) (allegedly false statement must be "necessary to the finding of probable cause"). The contradictory statements at issue are that one witness's statement said the cars traveled in a southerly direction while another statement said they traveled in a northerly direction. This contradiction relates to a minor matter and the statements are otherwise wholly consistent. More importantly, the statements were consistent as to the material elements of the allegedly unlawful behavior.

Additionally, Abramowitz contends that the Burkes' statements were of questionable value based on the fact that they indicated that Abramowitz was driving a Porsche while he claims he was operating a black SUV. Contrary to Abramowitz's

9

assertion, the affidavit clearly states that he claimed to be operating a black SUV on September 30, 2000. Further, the affidavit indicates that a store clerk, at one of the stores that Abramowitz claimed to have visited, stated that Abramowitz was operating a black SUV when he visited the store, but that she could not confirm exactly when he was in the store. Consequently, this material was not omitted from the affidavit. Accordingly, because a neutral magistrate issued a warrant, and because the plaintiff has failed to make the requisite substantial preliminary showing that Romano misled the issuing judge, the court concludes that it was objectively reasonable for Romano to believe that there was probable cause.[2]

## CONCLUSION

For the foregoing reasons, Romano's motion for summary judgment (document no. 11) is GRANTED.

It is so ordered this __23RD__ day of January, 2004 at Hartford, Connecticut.

Alfred V. Covello
United States District Judge

---

[2] Abramowitz also claims that "under Connecticut law the act of 'giving the finger' or giving a 'menacing look' is not a crime in any context" because it is not an obscene gesture. Even if the court were to assume that the "middle finger" is not obscene, the court concludes that Abramowitz's argument lacks merit as the totality of the conduct at issue nevertheless qualifies as "threatening" or "abusive" behavior. Such behavior is expressly prohibited under the relevant statute. See Conn. Gen. Stat. § 53a-181.

10